## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS

Loretta Peoples                                                                    **Plaintiff**

v.                          **CASE NO. 3:13CV00273 JTR**

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration                                          **Defendant**

## ORDER AFFIRMING THE COMMISSIONER

Loretta Peoples seeks judicial review of the denial of her application for disability insurance benefits (DIB) and supplemental security income (SSI). Peoples previously applied for disability and was denied in July 2005.[1] Peoples last worked in February 2009 as a substitute teacher.[2] She applied for DIB and SSI on May 16, 2007, with an alleged onset date of August 19, 2004.[3] Peoples's date last insured (DLI) is September 30, 2009.[4] She bases disability on fibromyalgia, degenerative disc disease, reflux, tendinitis of wrists and elbows, right foot and ankle pain, neuropathy, depression, anxiety, and personality disorder.[5]

**The Commissioner's decision.** The Commissioner's ALJ determined that

---

[1] SSA record at pp. 171-172.

[2] *Id.* at pp. 793-794.

[3] *Id.* at pp. 131 & 134.

[4] *Id.* at p. 171.

[5] *Id.* at pp. 148 & 958.

Peoples has not engaged in substantial gainful activity since the alleged onset date.[6]

Peoples has severe impairments - degenerative disc disease of the spine with mild

sensory neuropathy of the left foot; status-post right foot injury; mood disorder;

anxiety disorder; personality disorder and dissociative disorder.[7] None of Peoples's

severe impairments meet the Listings,[8] and Peoples can perform a reduced range of

light work - lifting, carrying, pulling or pulling 15-20 pounds occasionally and 10

pounds frequently; sitting or standing a total of 6 hours each in an 8 hour workday, 1

to 2 hours at a time; walking no more than 1 or 2 blocks at a time; occasional

climbing, stooping, crouching, kneeling and crawling, but no climbing of scaffolds or

ladders and no work requiring her to balance; frequent or occasional, but not constant,

reaching and grasping; no work at temperature extremes; and simple unskilled or low-

level semi-skilled work, which requires her to understand, remember and carry out

concrete instructions and interact only superficially with supervisors, coworkers and

the public.[9] The ALJ held that Peoples cannot perform any past relevant work,[10] but

---

[6]*Id.* at p. 768.

[7]*Id.* at p. 769.

[8]*Id.*

[9]*Id.* at pp. 770-771.

[10]*Id.* at p. 773.

can perform the positions of price marker, cafeteria attendant and library clerk, positions identified by the vocational expert (VE) as available in the state and national economies.[11] In the alternative, if Peoples was limited to sedentary work with a sit-stand option and the additional non-exertional limitations, the ALJ determined that she can perform the positions of charge account clerk and document preparer.[12] Peoples's application was denied.[13]

After the Commissioner's Appeals Council denied a request for review, the ALJ's decision became a final decision for judicial review.[14] Peoples filed this case to challenge the decision. In reviewing the decision, the Court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[15]

---

[11]*Id.* at p. 774.

[12]*Id.*

[13]*Id.*

[14]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the appeal procedure permits claimants to appeal only final decisions).

[15]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny any applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

**Peoples's allegations.** Peoples maintains that the ALJ's denial of disability benefits should be reversed because (1) the credibility determination is not supported by substantial evidence; and (2) the ALJ erred in assigning limited weight to the opinions of Peoples's treating physicians.

Substantial evidence is "less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion."[16] For substantial evidence to exist in this case, a reasonable mind must accept the evidence as adequate to support the ALJ's denial of benefits.[17]

**Credibility.** Peoples asserts that the ALJ erred in the credibility determination with respect to her allegations of disabling pain and symptoms related to her physical and mental impairments. After reviewing the medical record, the ALJ determined that Peoples was not credible to the extent that her statements were inconsistent with the RFC.

An ALJ must evaluate the claimant's credibility because subjective complaints play a role in determining the claimant's ability to work.[18] To evaluate Peoples's credibility, the ALJ followed the required two-step process and considered the

---

[16]*Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010) (internal quotations and citations omitted).

[17]*Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

[18]*Ellis v. Barnhart*, 392 F.3d 988, 995-96 (8th Cir. 2005).

4

required factors,[19] so the dispositive question is whether substantial evidence supports the credibility evaluation. The ALJ's determination that Peoples's subjective complaints of pain and limitations were not credible to the extent that they conflict with the assigned RFC is supported by substantial evidence.

The treatment of Peoples's back and foot/ankle pain has been conservative, consisting primarily of pain medications, muscle relaxers, and steroid injections. On multiple occasions, Peoples was prescribed treatment as simple as hiking boots, braces, physical therapy, and, during one appointment, yoga and tai chi.[20] Never once has a physician recommended or even suggested surgical options. The use of such conservative treatment weighs against Peoples's allegations.[21]

The records further establish that Peoples did not always follow recommendations from treating physicians. This provides further support for the ALJ's credibility determination.[22] As cited above, physical therapy was recommended

---

[19]*See* SSR 96-7p, *Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*.

[20]SSA record at pp. 271, 297, 355, 400, 589, 617 & 1031.

[21]*See Smith v. Colvin*, 756 F.3d 621, 626 (8th Cir. 2014); *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998).

[22]*Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir.2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility.").

by at least two physicians.[23] There is not one record indicating that Peoples attended physical therapy. Further, on multiple occasions Peoples never followed up on instructions from physicians to return for further evaluation.[24]

There are multiple extended periods of time during which Peoples sought no medical treatment. Following an August 8, 2008, appointment with her PCP,[25] Peoples went six months without any medical treatment. Another large break in medical treatment occurred between April 2009 and June 2011. The only treatment sought by Peoples during that period was emergency room care following a fall.[26] Peoples maintains that she did not seek medical care following April 2009 because she no longer received Medicaid.[27] There is, however, nothing in the record establishing that Peoples sought low cost or no cost medical care during this period. Therefore, her allegations of financial impediments to medical care are not persuasive.[28] The lack of

---

[23]SSA record at pp. 355 & 400.

[24]*Id.* at pp. 297, 355 & 657.

[25]*Id.* at p. 574.

[26]*Id.* at p. 1041.

[27]*Id.* at pp. 806-807.

[28]When there is no evidence that a claimant sought to obtain low-cost medical treatment from her treating physician or from area clinics or hospitals, or that she was denied medical care due to her financial condition, an ALJ can properly find that a claimant's financial condition was not severe enough to justify her failure to seek

medical care for long periods of time weighs against Peoples's allegations of disabling pain and symptoms.[29]

Perhaps most importantly, the diagnostic testing does not support Peoples's allegations. The record is replete with x-rays, MRIs, and CTs, among other things. The reports consistently find only minimal, if any, abnormalities. In 2005, two x-rays and a CT were performed on Peoples's right foot and ankle.[30] The tests showed no acute abnormalities of Peoples's foot or ankle.[31] There was, however, some question as to whether Peoples had an accessory navicular.[32, 33] After review by a podiatrist,

---

treatment. *See Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992).

[29]*See Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) ("An ALJ may discount a claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment."); *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997) (failing to seek medical assistance for alleged physical and mental impairments contradicted claimant's allegations of disabling conditions and supported unfavorable decision); *Ostronski v. Chater*, 94 F.3d 413, 419 (8th Cir. 1996) (complaints of disabling pain and functional limitations are inconsistent with the failure to take prescription pain medication or to seek regular medical treatment for symptoms).

[30]SSA record at pp. 316, 319 & 322.

[31]*Id.*

[32]*Id.*

[33]The navicular is the "[f]lattened, medially placed tarsal bone, concave on its posterior surface to accommodate the head of the talus, and convex on its anterior surface to articulate with the three cuneiform bones." Stedmans Med. Dictionary 588720.

however, it was determined that there was no accessory navicular.[34] The podiatrist confirmed that there were no acute or chronic abnormalities in Peoples's right foot or ankle.[35] He diagnosed her with tendinitis and foot pain.[36]

As to Peoples's complaints of back and neck pain, diagnostic tests revealed only minor issues. Although a 2004 x-ray of Peoples's cervical spine noted a straightened curvature of the spine, it also indicated no acute subluxation,[37] dislocation, fracture or loss of alignment.[38] A 2007 MRI of the cervical spine noted no straightened curvature.[39] A central protrusion of the C6-C7 intervertebral disc was identified, but it was not causing any significant cord compression.[40] In 2011, another x-ray was performed of Peoples's cervical spine.[41] No straightened curvature was

---

[34]SSA record at p. 355.

[35]*Id.*

[36]*Id.*

[37]Subluxation is "An incomplete luxation or dislocation; although a relationship is altered, contact between joint surfaces remains." Stedmans Med. Dictionary 859110.

[38]SSA record at p. 282.

[39]*Id.* at p. 456.

[40]*Id.*

[41]*Id.* at p. 1120.

noted.[42] The report identified mild loss of disc height and a small posterior osteophyte[43] at C4-C5, but found nothing acute.[44] Thoracic spine images also failed to detect more than minor abnormalities. A 2007 MRI of the thoracic spine showed mild degenerative disc disease with some mild bulging disc, but no evidence of any soft disc rupture producing foraminal impingement.[45]

Multiple MRIs were performed on Peoples's lumbar spine. In 2007, an MRI indicated mild degenerative disc disease with no clear evidence of stenosis.[46] An MRI of the lumbar spine performed in 2008 concluded that there were "some mild degenerative changes in the lumbar spine, but not severe. No acute causes of low back pain detected."[47] The last MRI of the lumbar spine was conducted in 2011.[48] Although the report identified "tiny old fractures" at the endplate of L1, it concluded that there

---

[42]*Id.*

[43]An osteophyte is "[a] bony outgrowth or protuberance." Stedmans Med. Dictionary 638450.

[44]SSA record at p. 1120.

[45]*Id.* at p. 458.

[46]*Id.* at p. 457.

[47]*Id.* at p. 562.

[48]*Id.* at p. 1122.

was no disc herniation or stenosis.[49] These findings do not support Peoples's complaints of disabling neck and back pain.

The diagnostic testing also fails to support Peoples's complaints of disabling symptoms associated with neuropathy. A 2009 nerve conduction study concluded that there was evidence of only mild sensory neuropathy involving the left lower extremity.[50] The test failed to reveal any radiculopathy[51] or myopathy.[52]

Assessments completed by state physicians provide additional support to the ALJ's credibility determination with respect to Peoples's physical impairments. In the October 20, 2010, Physical Residual Functional Capacity Assessment, a state physician assigned no non-exertional limitations and determined that Peoples is capable of medium work.[53] This opinion was affirmed by a second state physician.[54] Also in October 2010, a state physician completed a General Physical Examination.[55]

---

[49]*Id.*

[50]*Id.* at p. 672.

[51]Radiculopathy is a "[d]isorder of the spinal nerve roots." Stedmans Med. Dictionary 748650.

[52]Myopathy is "[a]ny abnormal condition or disease of the muscular tissues; commonly designates a disorder involving skeletal muscle." *Id.* at 585150.

[53]SSA record at pp. 1095-1097 & 1100.

[54]*Id.* at p. 1106.

[55]*Id.* at p. 1082.

Although the physician noted tenderness in the right ankle, he also indicated that Peoples exhibited normal ranges of motion in her right ankle and spine, negative straight leg raises and a normal gait.[56] The state physician diagnosed Peoples with a remote right foot injury with no fracture or operations; a history of degenerative disc disease, mild on MRI with no operations; and a history of fibromyalgia.[57] He assigned no restrictions.[58]

The Function Report completed by Peoples weighs against her allegations of disabling pain and symptoms. In the Report, Peoples stated that she takes care of a young child, washes laundry, makes her bed and performs light house work and cooking.[59] She has no problems tending to her personal care, can shop in stores, and can drive and go out alone.[60] Although Peoples alleges disabling mental impairments, she maintains that she is able to pay bills, count change, handle a savings account and use a checkbook/money orders.[61] Further, she gets along with others and can follow

---

[56]*Id.* at pp. 1084-1085.

[57]*Id.* at p. 1086.

[58]*Id.*

[59]*Id.* at pp. 177 & 182.

[60]*Id.* at pp. 181 & 183.

[61]*Id.* at p. 183.

both written and spoken instructions.[62]

Finally, there are notes contained in the record in which it appears that physicians themselves question the credibility of Peoples. In September 2004, it was noted in an emergency room record that although Peoples complained of worsening back pain and continuous ankle pain, she "walked in to triage carrying [a] 34 lb. child."[63] In April 2007, a treating physician assessed Peoples with "unsubstantiated pain."[64] A March 2009 progress note indicates that Peoples was told by a physician that she would not be getting any controlled pain medications.[65] The same physician further noted that Peoples wanted a lot of unnecessary referrals.[66]

The medical records also support the ALJ's credibility determination with respect to Peoples's allegations associated with her mental impairments. Peoples herself has made inconsistent statements concerning her mental impairments. During her Mental Residual Functional Capacity Assessment, Peoples stated that it was her chronic pain and not her mental health that primarily affects her ability to be

---

[62]*Id.* at p. 185.

[63]*Id.* at p. 381.

[64]*Id.* at p. 471.

[65]*Id.* at p. 655.

[66]*Id.*

employed.[67] In May 2012, Peoples indicated that she had no problems with concentration, memory or mental health.[68]

It also appears that Peoples's mental impairments were not the primary concern during appointments with her treating physicians. Although Peoples was consistently prescribed depression and/or anxiety medications, many notes make little to no mention of mental health concerns.[69] Further, in treatment notes in which mental health is mentioned, the language suggests that Peoples is actually doing well mentally. In 2007 and 2008, one of Peoples's treating physicians consistently found that Peoples demonstrated intact memory, normal affect and was alert and oriented to person, place and time.[70] In a 2009 cardiology treatment note, Peoples's physician observed that Peoples was not depressed and appeared to be in good spirits.[71] Peoples was alert and oriented to person, place and time and answered questions appropriately.[72] During a subsequent neurology consult, it was noted that Peoples was

---

[67]*Id.* at p. 1059.

[68]*Id.* at p. 1130.

[69]*Id.* at pp. 271, 334-336, 338, 342-344, 400-403, 405-406, 410, 414, 470, 494, 579, 588, 591, 593, 596, 598, 617, 1029, 1110, 1113, 1116 & 1126.

[70]*Id.* at pp. 575, 580, 589, 592, 595, 597, 599, 617 & 654.

[71]*Id.* at pp. 1032 & 1039.

[72]*Id.* at pp. 1038-1039.

pleasant and cooperative.[73] She was alert and fully oriented "with intact higher mental functions including speech, language, recollection, [ ] abstraction, fund of knowledge reasoning and constructional copy."[74] Indeed, in the last progress note contained in the record, Peoples was asked if she was feeling down, depressed or hopeless.[75] Peoples answered "no."[76] She was then asked if she had little interest or pleasure in doing things.[77] Peoples again answered "no."[78] Peoples's treating physician noted that Peoples was doing good with the medication and treatment plan.[79]

Importantly, treatment records from counseling sessions also support the determination that Peoples's mental impairments are not disabling. In May 2008, Peoples reported that she was "doing okay."[80] Every aspect of her mental status exam was average to good.[81] In a subsequent note, although Peoples was slightly anxious,

---

[73]*Id.* at p. 656.

[74]*Id.* at p. 657.

[75]*Id.* at p. 1129.

[76]*Id.*

[77]*Id.*

[78]*Id.*

[79]*Id.*

[80]*Id.* at p. 570.

[81]*Id.*

the remaining aspects of the mental status exam were average to good.[82] Again in November 2008, Peoples reported that she was "doing okay."[83] All aspects of the mental status exam were average to good.[84] In January 2009, although Peoples reported continued panic attacks, depression and anxiety, she also communicated that she was doing well with her medications and reported some mood stabilization over previous 90 days.[85] Yet another note observed Peoples's intelligence and her "active steps to improve life."[86] The same note indicated that Peoples was very satisfied with the services provided by her therapist and assessed Peoples's progress towards her goals and objectives at seven out of ten.[87]

The assessments completed by state physicians provide even greater support for the ALJ's credibility determination with respect to Peoples's mental impairments. In October 2010, a state physician determined that Peoples can drive unfamiliar routes, perform own shopping and bill paying, tend to basic self care needs, communicate and interact in a socially adequate manner, communicate in an intelligible and effective

---

[82]*Id.* at p. 568.

[83]*Id.* at p. 639.

[84]*Id.*

[85]*Id.* at p. 606.

[86]*Id.* at p. 607.

[87]*Id.*

manner, cope with the typical mental demands of basic work-like tasks, attend and sustain concentration on basic tasks, sustain persistence in completing tasks, and complete work-like tasks within an acceptable timeframe unless the tasks aggravate her pain issues.[88] A second state physician determined that Peoples is only moderately limited in seven of twenty functional capacities.[89] In the remaining thirteen, he noted that Peoples is not significantly limited.[90] The physician concluded that Peoples "is able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variables, little judgment; supervision required is simple, direct and concrete (unskilled)."[91] This assessment was subsequently affirmed by a second state physician.[92]

As with Peoples's allegations of disabling physical impairments, the gaps in medical treatment also weigh against Peoples's allegations of disabling mental impairments. Additionally, as discussed above, the Function Report and statements made by physicians questioning her credibility provide further support for the ALJ's determination with respect to Peoples's allegations of disabling mental impairments.

---

[88]*Id.* at pp. 1060-1061.

[89]*Id.* at p. 1066.

[90]*Id.*

[91]*Id.*

[92]*Id.* at p. 1103.

A reasonable mind would accept the evidence as adequate to support the ALJ's credibility determination. The credibility determination is supported by substantial evidence.

**Treating physicians.** Peoples maintains that the ALJ erred in giving reduced weight to the opinions of her treating physicians. This argument is not persuasive. The ALJ's decision to assign less weight to the treating physicians' opinions is supported by substantial evidence. Although the opinion of a treating physician is usually granted controlling weight, "an ALJ may grant less weight . . . when that opinion conflicts with other substantial medical evidence contained within the record."[93]

Dr. Stevan Van Ore stated in a December 30, 2004, letter that Peoples was in no condition - at that time - to work.[94] Minimal weight was given to this opinion by the ALJ because the letter was oddly worded and the script of the note and the signature were different. Further, the ALJ noted that the last time Dr. Van Ore treated Peoples was in 1999, more than five years prior to the letter. The ALJ was correct to grant reduced weight to Dr. Van Ore's opinion. The letter is worded strangely in that it appears it was written to advocate for Peoples to keep her home. It also looks like the author of the letter and the signatory were two different people. Perhaps most

---

[93]*Prosch v. Apfel*, 201 F.3d 1010, 1013-14 (8th Cir. 2000).

[94]SSA record at p. 973.

17

importantly, though, is the lapse in time between Dr. Van Ore's treatment of Peoples and the date of the letter. This supports the ALJ's decision to assign reduced weight to Dr. Van Ore's opinion.[95] Further, Dr. Van Ore's opinion is inconsistent with the evidence reviewed above in the credibility analysis. This provides even greater support for the ALJ's determination with respect to Dr. Van Ore.

In a letter dated December 18, 2007, Peoples's treating physician, Roger Cagle, stated, "It is my professional opinion that [Peoples] is a good candidate for disability benefits as she is unable to maintain gainful employment."[96] The ALJ assigned reduced weight to this opinion on the basis that a determination of whether a claimant can work based on medical limitations is reserved for the Commissioner. The ALJ is indeed correct.[97] Further, as with Dr. Van Ore's opinion, Dr. Cagle's opinion is inconsistent with the medical records reviewed above. This provides additional support for the ALJ's assignment of reduced weight to Dr. Cagle's opinion.

The record also contains the opinion of Peoples's therapist. In December 2007,

---

[95]*See Brown v. Astrue*, 611 F.3d 941, 954 (8th Cir. 2010) (The opinion of a treating physician who had not treated the claimant for eight months was appropriately reduced in weight.).

[96]SSA record at p. 552.

[97]*Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010) ("[O]pinions that a claimant is 'disabled' or 'unable to work' concern issues reserved to the Commissioner and are not the type of opinions which receive controlling weight.").

Peoples's therapist drafted a letter in support of Peoples, stating,

> [Peoples] has had significant difficulties with extreme depressed mood, anxiety, and periods of time when she loses her memory. This has created limited social support, inability to be in any social/public setting for extended periods of time, and very poor concentration. . . . Currently, [Peoples's] symptoms will not allow her to effectively take care of many daily responsibilities and would create significant problems at any employment setting.[98]

Steve Austin, Peoples's treating psychiatrist, signed off on the letter. The ALJ gave reduced weight to the opinion because it was inconsistent with the therapist's treatment notes, other medical records and Peoples's own statements concerning her mental impairments. As discussed above, Peoples has indicated that it is her physical, and not her mental, impairments that really affect her ability to work.[99] She has also stated that her concentration and memory are unaffected and that she has no mental problems.[100] Further, as identified by the ALJ, the therapy notes, and medical records as a whole, do not support this opinion.

A reasonable mind would accept the evidence as adequate to support the ALJ's assignment of reduced weight to the opinions of Peoples's treating physicians. This determination is supported by substantial evidence.

---

[98]SSA record at p. 604.

[99]*Id.* at p. 1059.

[100]*Id.* at p. 1130.

**Conclusion.** Substantial evidence supports the ALJ's decision. No error occurred. For these reasons, the court DENIES Peoples's request for relief (docket entry # 2) and AFFIRMS the Commissioner's decision.

It is so ordered this 24th day of February, 2015.

_____
UNITED STATES MAGISTRATE JUDGE